## Meirowsky Brothers v. McAllister.

*Conversion—Bills of lading—Possession necessary to conversion—Duty of agent not in possession of goods purchased for principal to execute bill of sale to principal.*

1. There cannot be conversion of personal property without actual or constructive possession.

2. Where defendant as agent bought goods upon order of plaintiff and delivered the evidence of title, viz., the bills of lading, to the party recognized by plaintiff in all the prior purchases as the one to whom they were to be delivered, and whose signature was necesary to transfer the title to, and possession of. the goods to the plaintiff, if this party refuses to endorse such bills of lading, defendant is not guilty of conversion in refusing afterwards to execute a bill of sale for the goods to plaintiff.

*Corporations—Authority of officer to execute bill of sale.*

3. There is no implied authority in a secretary and treasurer of a corporation to execute bills of sale, nor is there any established custom from which as a matter of law he has such general authority.

Motion for judgment *non obstante veredicto.* C. P. No. 5, Phila. Co., Dec. T., 1919, No. 1361.

*M. Wolf,* for plaintiffs; *H. J. Scott,* for defendant.

HENRY, P. J., 52nd judicial district, specially presiding, Nov. 14, 1921.—The plaintiffs in this suit seek to recover the market value of certain mica, paid for by them and alleged to have been illegally converted by the defendant. The alleged act of conversion consisted in refusing to execute bills of sale or other documents showing ownership of the goods in question in the plaintiffs.

The plaintiffs made a formal offer of the facts they proposed to prove, and the defendant admitted these facts to be true. The defendant made a formal offer of the facts he proposed to prove, and the plaintiffs admitted these facts to be true. This left no disputed questions of fact for the jury. Both sides asked for binding instructions. That for the plaintiff was affirmed, with the suggestion that it was no intimation of the opinion of the court upon the question at issue. Under these instructions, the jury returned a verdict in favor of the plaintiff for $13,734.45, being the value of the goods and interest;

and the defendant now moves for judgment *non obstante veredicto* upon the whole record.

The plaintiffs, who were German subjects, although residing and doing business in this country for a number of years, were importers and dealers in mica and manufacturers of mica goods, and, owing to the war, were not allowed to import mica in their own names from England or on English vessels. An arrangement was made by the plaintiffs with the Mica Products Company, a corporation of which the defendant was secretary and treasurer, under which, for a commission of 2½ per cent., said company agreed to buy and import mica upon the order of the plaintiffs, the said plaintiffs meeting payments when and as required of the Mica Products Company. Under this arrangement numerous purchases of mica were made in England by the Mica Products Company for the plaintiffs, extending from early in 1916 to late in the year 1917. The goods were shipped upon consular invoice with bill of lading attached, consigned to the British consul, care of the Philadelphia National Bank, on account of the Mica Products Company, Inc., of Philadelphia, and the accompanying bills of lading were to the joint order of the British consul at New York and the Mica Products Company. The Philadelphia National Bank paid for the mica in funds provided by the plaintiffs and delivered the bills of lading to the Mica Products Company, by whom they were endorsed and forwarded to the British consul in New York for his signature. Upon endorsing the bills of lading, the British consul returned them to the Mica Products Company at Philadelphia, by whom they were delivered to the plaintiffs, and they, the plaintiffs, then secured the goods at the custom house upon surrender of the bills of lading. This was the course followed in the dealings of the parties and under their arrangement up to the time of the receipt of the five shipments of mica which are the basis of this suit, and the course of dealing here was the same up to the receipt of the bills of lading by the British consul. This official refused to endorse the bills of lading, but retained them in his possession at New York, awaiting instructions from his superiors in England. With the bills of lading, endorsed by the Mica Products Company, in the hands of the British consul in New York, the plaintiffs requested the defendant to execute bills of sale to them for the mica, or to execute other documents showing their ownership of the mica. This request was refused, and plaintiffs contend this refusal was a conversion by the defendant and makes him liable for the value of the goods. On Jan. 17, 1918, the defendant severed his connection with the Mica Products Company as an officer and stockholder, and on Jan. 22, 1918, he notified the plaintiffs in writing that he had resigned as director, secretary and treasurer of the Mica Products Company, and that he had been succeeded by J. A. Rogers. On Feb. 28, 1919, three of the five shipments of mica in question were delivered to Watson Brothers, of Massachusetts, by order of the War Trade Board of the United States and the British consul at New York. The War Trade Board of the United States assumed no control over the mica until Jan. 21, 1918. The defendant never had physical possession of the mica, nor was it under his personal control.

The position of the plaintiffs is untenable for several reasons. First, the defendant did not have possession of the goods in question, and possession is essential to a conversion. The goods were in the custom house at Philadelphia. The evidence of title to the goods, the bills of lading, was in the possession of the British consul at New York. It is true there may be a constructive possession, and the defendant here might be said to be in constructive possession of the goods if he had the bills of lading in his possession and

1 D. & C.

refused to deliver them to the party entitled to them. But the defendant had delivered this evidence of title to the party recognized by the plaintiffs in all their prior dealings as the one to whom they were to be delivered, and as the one whose signature was necessary to transfer the title to and possession of the goods to the plaintiffs. The evidence clearly establishes that the demands by the plaintiffs for bills of sale or some evidence of ownership were not made until after the bills of lading had been endorsed by the Mica Products Company and were in the hands of the British consul at New York. At the time of the demands, then, there was no actual possession and no constructive possession of the goods by the defendant, and, consequently, there could have been no conversion by him. This would seem to be a sufficient answer to the claim of the plaintiffs. Another controlling reason is that no authority in the defendant to execute bills of sale has been shown. While it is true that in the course of dealing between the plaintiffs and the Mica Products Company the defendant endorsed the bills of lading for the company, and this might lead to the inference that he had authority to make these endorsements, such inference could go no further than to indicate that he had authority to do this act. There is no implied authority to execute bills of sale in a secretary and treasurer, nor is there any such established custom from which a court could say judicially that secretaries and treasurers of corporations have general authority to execute bills of sale. As a matter of fact, the execution of papers of that character is usually left to the president of the corporation.

Under the evidence in this case, even the Mica Products Company could not be required to execute bills of sale with the outstanding bills of lading endorsed, making them negotiable and transferring ownership in the mica from hand to hand by mere delivery of the bills of lading. The best and, under these facts, the only evidence of title to the goods was the bills of lading endorsed by the Mica Products Company and the British consul. The Mica Products Company had done all that could be required of it under the arrangement with the plaintiffs. The effect of executing bills of sale to the plaintiffs, with the negotiable bills of lading outstanding, subject to endorsement and delivery by the British consul to some one other than the plaintiffs, might have placed the Mica Products Company in a position where they would be liable to two parties. As a matter of common justice, if the Mica Products Company received payment for the mica from the party to whom it was delivered through the agency of the British consul, then the Mica Products Company should account to the plaintiffs for either the amount received by them from the party to whom the goods were delivered or for the amount originally paid by the plaintiffs for this mica; but whatever dereliction of the Mica Company there might be, it could not be chargeable to the defendant, who was its secretary and treasurer, and this is especially true in view of the fact that he was not connected with the company at the time when the goods were delivered under the order of the British consul and the United States War Trade Board.

During the time of the transactions involved in this suit, the United States was at war with Germany, and, reading between the lines, the arrangement between the plaintiffs and the Mica Products Company would seem to have been a subterfuge to secure mica from England, or imported on English vessels, for German subjects. It may be that a defendant cannot under some circumstances take advantage of this condition, and yet, on the other hand, it may be that when it is necessary to show such arrangement in order to effect a recovery, that it would be regarded as illegal and contrary to public policy, and possibly, under the Acts of Congress, as a trading with the

enemy. But it is not necessary to here rest the case, and for the reasons previously given, the verdict of the jury must be set aside and judgment entered for the defendant.

And now, to wit, Nov. 14, 1921, judgment *non obstante veredicto* upon the whole record is hereby entered in favor of the defendant. An exception to this action of the court is hereby noted in favor of the plaintiffs.